**Philip S. WOODBURY, Plaintiff-Appellant,**

v.

**Neil McKINNON, Chairman, et al., Defendants-Appellees.**

**No. 30420.**

United States Court of Appeals, Fifth Circuit.

July 12, 1971.

Rehearing and Rehearing En Banc Denied Sept. 24, 1971.

George B. Azar, Montgomery, Ala., Christie G. Pappas, Eufaula, Ala., for plaintiff-appellant; Azar Campbell & Azar, Montgomery, Ala., of counsel.

Russell L. Irby, Eufaula, Ala., W. Inge Hill, Montgomery, Ala., Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., Attorneys for above-named defendants-appellees W. W. Bledsoe, Kendall Epps, Nell Epps, Edward T. Comer, James C. Doyle, John M. Jackson, Richard M. Whitehurst, and Kenneth C. Yohn.

Before CLARK, Associate Justice,[*] and GEWIN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case originated on the complaint of Dr. Philip S. Woodbury that he had been deprived of surgical privileges at Barbour County Hospital without due process of law in that no charges had been made against him and that no hearing had been held. After the complaint was filed, the medical staff of the hospital held a hearing to consider and act upon Dr. Woodbury's qualifications to handle surgery and conduct surgical procedures in the hospital. Amending their answers to allege that such hearing had taken place, defendants moved for a summary judgment.

---

[*] Honorable Tom C. Clark, Associate Justice United States Supreme Court (Ret.), sitting by designation.

Upon a complete review of a transcript of the hearing, affidavits and exhibits, the district court found that the hearing was in accord with the requirements of procedural due process and that the hospital authorities had not acted arbitrarily, capriciously or unreasonably in refusing to reappoint Dr. Woodbury to the surgical staff. Finding that there was no genuine issue as to any material fact on these matters, the district court held that no substantive rights had been violated and granted summary judgment in favor of the hospital authorities. We affirm.

Plaintiff contends that he was denied procedural and substantive due process in both the administrative hearing and in the court below, and that there are issues of fact in this case which he is entitled to litigate.

It is argued that Dr. Woodbury's attorney was not allowed to question members of the medical staff of the hospital by deposition and written interrogatories and that he was not permitted to cross-examine or question them at the time of the administrative hearing. A determination of whether this violated due process depends entirely upon the purpose for which such interrogation was intended.

Appellant's brief states that this discovery would have shown that the cases, procedures and operations performed by the individual defendant members of the medical staff are no better and in some instances not as good as those of Dr. Woodbury, and that it would disclose that the rules and regulations which Dr. Woodbury is alleged to have violated are also violated by the very defendants who determine surgical privileges. He states that it is gravely material whether operations performed by other members of the medical staff are of a higher degree of skill, competence and ability than Dr. Woodbury.

The difficulty with the argument is simply that Dr. Woodbury has not brought that issue to court by any allegation of fact. Nor does the record support any such defense to the charges made against him in the administrative hearing. In any event, we think that the argument misses its mark as to Dr. Woodbury's rights in the posture of this case. It misconceives his substantive rights as balanced against the rights of the governing authority of the hospital.

■ Once having become a member of the hospital surgical staff Dr. Woodbury had a right to reappointment until the governing authorities determined after a hearing conforming to the minimum requirements of procedural due process that he did not meet the reasonable standards of the hospital. The decision resulting from the hearing must be untainted by irrelevant considerations and supported by sufficient evidence to free it from arbitrariness, capriciousness or unreasonableness. This is the extent to which Dr. Woodbury is entitled to substantive due process under the United States Constitution. Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir. 1968).

■ A doctor has no constitutional right to practice medicine in a public hospital. Hayman v. Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927). However, there is no dispute that the operation of this hospital is state action and that it is required to meet the provisions of the Fourteenth Amendment in the admission of physicians to its staff. Foster v. Mobile County Hospital Board, supra; Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966); Meredith v. Allen County War Memorial Hospital Comm., 397 F.2d 33 (6th Cir. 1968); see Annot. 37 A.L.R.3d 645 (1971).

■ The Constitution, however, does not prevent the hospital from establishing standards for admission geared to the purpose of providing adequate hospital care. This court has recently spoken to the broad discretion that must be given to the governing board of a hospital in setting the standards and in admitting physicians to its staff. Sosa v. Board of Managers of Val Verde Memorial Hospital, 437 F.2d 173 (5th Cir. 1971). Judge Goldberg there

placed in proper focus the restraint that must be exercised in judicial consideration of challenges to hospital administration.

"No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus." *Id.* at 177.

It is within this setting that we consider Dr. Woodbury's appeal.

### I. Procedural Due Process

The plaintiff contends that he was denied procedural due process in that (1) the notice of the charges was insufficient, (2) the right of cross-examination was denied, and (3) the medical staff was biased.

Considered in the light of opinions of the United States Supreme Court as to the requirements of due process, it is apparent that these arguments must fail.

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960).

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria and Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); see also Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 [1971].

"Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess." Joint Anti-Fascist Refuge Committee v. McGrath, 341 U.S. 123, 162–163, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Mr. Justice Frankfurter's concurring opinion).

"Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." Hannah v. Larche, *supra*, 363 U.S. at p. 442, 80 S.Ct. at p. 1515.

A. *Sufficiency of notice of charge.* Dr. Woodbury was charged in writing with lack of competence and judgment

to perform surgery and surgical procedures. Four specifications were noted: (1) lack of surgical judgment, (2) lack of an assistant while performing surgery, (3) assisting another who had no surgery privileges, and (4) training and background. The first three specifications contained names of specific cases and the hospital records of those cases were furnished to the plaintiff. The plaintiff requested the exact nature of the fault in each case. The Medical Chief of Staff refused because he felt that any competent doctor could discover that from the records and further that the records must be read in context as a unit.

■■ We are concerned with whether sufficient notice was given to comply with minimum standards of due process and not whether the charges would survive the scrutiny applied to a criminal indictment. Bell v. Burson, *supra*, 402 U.S. at 540, 91 S.Ct. 1586. The notice was specific enough to permit the plaintiff to answer the charges against him. He was offered additional time to respond to the matters discussed at the hearing but the offer was declined. We conclude that Dr. Woodbury, as a professional person, was sufficiently notified of the basis upon which the medical staff was considering his competence for surgical privileges.

B. *Right to cross-examination.* It is plaintiff's position that inasmuch as his surgical judgment was being considered by members of the medical staff who practiced in the hospital, they must submit themselves to the test of their own surgical judgment. In effect, he would try the judges. We do not believe that this is a constitutional necessity. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

■ The hearing was an informal discussion by the medical staff of the cases specified in the charges against the plaintiff. There were no witnesses presented at the hearing. Nor did any of the doctors testify in any sense of the word. The members of the medical staff, including plaintiff, were free to make comments or ask questions concerning each particular case as reflected in the hospital records. Under these circumstances, there was no one to cross-examine. The plaintiff's attorney, although present, was not permitted to question the other doctors present. However, the plaintiff was allowed to ask questions and exercised that privilege freely. Since the attorney and the plaintiff could confer at will, we see no due process violation in the refusal to permit the attorney to ask questions. Dr. Woodbury was in a familiar setting, with familiar people, discussing a familiar subject. His expertise and acquaintance with the facts of each case thoroughly qualified him to be effective in discussion with his fellow doctors.

■ We have held that cross-examination need not be a part of every hearing in order to satisfy due process. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1951). Whether it is required depends upon the circumstances. Because of the nature of the charges (professional competence) and the nature of the hearing (informal discussion of medical records with no witnesses) cross-examination was not required in this case.

C. *Bias of medical staff.* The plaintiff contends that the medical staff was biased. This court has recognized that in a situation such as this, the tribunal should be impartial. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). However, the record is bare of any indication that the medical staff was in fact biased by any matter not relevant to the proper consideration of Dr. Woodbury's qualifications. There were no allegations of bias in the complaint and there were no affidavits filed in opposition to the motion for summary judgment.

■ The only suggestion of bias contained in the record is in a letter from plaintiff's counsel to the Chief of the medical staff asking for an ad hoc

committee to be appointed.[1] The effect to be given this letter as to these allegations is very limited. It is not within the material specified in Rule 56, F.R. Civ.P., to be considered on a motion for summary judgment. Even so, the allegations of bias are insufficient to raise a fact question even if contained in an affidavit. The consideration on a previous occasion of the plaintiff's qualifications would not demonstrate such bias as to constitute a denial of due process. United States v. Morgan, *supra,* 313 U.S. at p. 421, 61 S.Ct. 999; Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 [1971].

A reading of the transcript of the hearing fails to indicate any bias against the plaintiff by the medical staff. To the contrary, the hearing transcript reveals that the hearing was held in a decorous manner with a high degree of professionalism.

## II. Substantive Due Process

The questions here are whether the standards set by the hospital authority are reasonable and whether they have been applied without arbitrariness, capriciousness or unreasonableness.

The general standards investigated by the credentials committee of the medical staff, i. e., character, qualifications and community standing, are the same standards held reasonable in Sosa v. Board of Managers of Val Verde, supra. The language of that opinion is well-suited to this case:

"We think the stated factors used by the Credentials Committee of the Medical Staff to evaluate staff applicants are reasonable. This court has recently indicated that staff appoint-ments may be constitutionally refused if the refusal is based upon 'any reasonable basis, such as the professional and ethical qualifications of the physicians or the common good of the public and the Hospital,' Foster v. Mobile County Hospital Board, supra, 398 F. 2d at 230. Admittedly, standards such as 'character qualifications and standing' are very general, but this court recognizes that in the area of personal fitness for medical staff privileges precise standards are difficult if not impossible to articulate. North Broward Hospital District v. Mizell, supra [Fla., 148 So.2d 1]. The subjectives of selection simply cannot be minutely codified. The governing board of a hospital must therefore be given great latitude in prescribing the necessary qualifications for potential applicants. Foster v. Mobile County Hospital Board, supra; North Broward Hospital District v. Mizell, supra; Sussman v. Overlook Hospital Association, supra [95 N.J.Super. 418, 231 A.2d 389]. Contra, Milford v. People's Community Hospital Authority, 1968, 380 Mich. 49, 155 N.W.2d 835." (p. 176 of 437 F.2d).

The record of this case is devoid of any inference that considerations other than the medical competence of Dr. Woodbury were involved. There is not the slightest suggestion shown by the facts that the hospital action was for any reason other than the concern of the authorities for the standard of medical practice and the welfare of the hospital patients.

The claim that Dr. Woodbury may be getting uneven treatment because other members of the medical staff are no better than he gives little support to his constitutional argument. Where there

---

1. " * * * In addition to the above, we call to your attention that you have set this hearing before the entire Medical Staff and we point out that on January 12, 1970, at a Medical Staff meeting, the Medical Staff voted to withhold the privileges of Dr. Woodbury based upon the vague and general allegations set forth in the Credential Committee minutes of January 7, 1970.

 In view of the bias and prejudice generally shown by the Medical Staff, we request that an ad hoc committee of disinterested doctors, not affiliated with Barbour County Hospital, be selected for the purpose of conducting this hearing * *."

is no intentional or purposeful discrimination, and a standard reasonable on its face is applied in good faith, the one who fails to meet the standard has not been denied constitutional equal protection just because others have not likewise been held accountable. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Moss v. Hornig, 314 F.2d 89 (2d Cir. 1963); Stanturf v. Sipes, 335 F.2d 224 (8th Cir. 1964); Delia v. Court of Common Pleas of Cuyahoga Co., 418 F.2d 205 (6th Cir. 1969); Davis v. Georgia State Board of Education, 408 F.2d 1014 (5th Cir. 1969); Zayre of Ga. v. Marietta, 416 F.2d 251 (5th Cir. 1969).

### III. Summary Judgment

 The plaintiff argues that the district court should have conducted "a full scale trial" with full discovery. Again he would try the medical staff in the district court. This misconceives the limited scope of judicial review in cases of this kind. Sosa v. Board of Managers of Val Verde, *supra*. As stated in Ferguson v. Thomas, *supra*, in an analogous school employment case:

"Federal Court hearings in cases of this type should be limited in the first instance to the question of whether or not federal rights have been violated in the procedures followed by the academic agency in processing the plaintiff's grievance. If a procedural deficit appears, the matter should, at that point, be remanded to the institution for its compliance with minimum federal or supplementary academically created standards. This should be done so that the matter can first be made ripe for court adjudication by the school authorities themselves. Stevenson v. Board of Education of Wheeler County, supra [5 Cir., 426 F.2d 1154]. See also, French v. Bashful, 425 F.2d 182 (5th Cir. 1970). If no federal right has been violated in the procedures followed, then the court should next look to the record as developed before the academic agency to determine whether there was substantial evidence before the agency to support the action taken, with due care taken to judge the constitutionality of the school's action on the basis of the facts that were before the agency, and on the logic applied by it. Johnson v. Branch, supra [4 Cir., 364 F.2d 177]. If the procedures followed were correct and substantial evidence appears to support the Board's action, that ordinarily ends the matter." 430 F.2d at 858.

Although when originally filed the complaint would have required a remand to the hospital authorities for compliance with the minimum standards for procedural due process, those requirements were met before final disposition of the case.

The defendants had a duty to provide the patients of Barbour County Hospital with competent professional medical services. The practice of major surgery is a highly specialized field and is recognized as a delicate art. The citizens of Barbour County are entitled to have the defendants, who have been charged with that responsibility, make the sensitive and critical judgments as to the medical competence of the hospital staff. Once having determined that the judgment was supported by substantial evidence and was made using proper criteria, after a satisfactory hearing, on a rational basis, and without irrelevant, discriminatory and arbitrary influences, the work of the court came to an end. There was nothing further to try and the entry of summary judgment was entirely proper.

Affirmed.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge

in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.